# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KENNETH A. KERCHER and | § | |
| SUZANNE B. KERCHER | § | |
| | § | |
| v. | § | Case No. 4:07-cv-310 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiffs Kenneth A. Kercher's ("Kercher") and Suzanne B. Kercher's[1] Motion for Summary Judgment Based on Untimely Assessment Under 26 U.S.C. § 6501(a) ("Motion for Summary Judgment") (Doc. #25). Defendant United States of America ("Government") filed a Response and Cross-Motion for Summary Judgment ("Cross-Motion for Summary Judgment") (Doc. #28). Thereafter, the Government filed a Notice of Authority Regarding Plaintiffs' Motion for Summary Judgment ("Notice of Authority") (Doc. #31). In opposition to the Government's Response and Notice of Authority, Kercher filed a Response and Reply ("Reply") (Doc. #34). Having fully considered the parties' arguments, the undisputed facts, and the applicable law, the Government's Cross-Motion for Summary Judgment is hereby **GRANTED** and Kercher's Motion for Summary Judgment is hereby **DENIED.**

### Statutory Framework

Prior to 1982, the taxation of partnerships was a dismal affair. Partnerships filed informational income tax returns which reflected the distributive shares of income, gains, deductions, and credits attributable to their individual partners. When the IRS sought to adjust an item on a

---

[1] Although Suzanne B. Kercher is a party to this suit only because she filed a joint return with her husband, this Memorandum Opinion and Order applies equally to both Plaintiff Kenneth A. Kercher and Suzanne B. Kercher.

partnership return, it would essentially entail an audit of each partner's individual tax return. This methodology not only squandered resources, but it also produced inconsistent results and duplicative litigation. In an effort to revise the statutory scheme for auditing partnerships, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Publ.L. No. 97-248, § 402(a) 96 Stat. 324, 648-71 (1982) ("TEFRA"). "Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998).

The new law avoided duplicative litigation by requiring that "the tax treatment of any partnership item shall be determined at the partnership level." 26 U.S.C. ("I.R.C.") § 6221. Although TEFRA still requires partnerships to file informational income tax returns, partnerships themselves are not subject to federal income taxation. Congress' enactment of TEFRA ensured that individual partners became responsible for reporting their *pro rata* share of the partnership's tax on their individual income tax returns. *See* I.R.C. § 701. TEFRA thereby "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002).

An initial determination of whether an item is a "partnership item" dictates whether TEFRA applies. A "partnership item" under TEFRA is defined as "any item required to be taken into account for the partnership's taxable year under any provisions of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). The Treasury Regulations clarify TEFRA's definition of "partnership item " as "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and

characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)-1(b). Conversely, a non-partnership item is any item which is not a partnership item. I.R.C. § 6231(a)(4). Unlike partnership items, non-partnership items receive tax treatment at the individual partner level. *Duffie v. United States*, 600 F.3d 362, 366 (5th Cir. 2010).

Affected items, categorized as a hybrid third category of TEFRA items, also exist. "Affected items" are defined as "any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5). As such, affected items can have both partnership item and non-partnership item components. *See Duffie*, 600 F.3d at 366 (explaining in detail two different types of affected items and their implications for partnership taxation). "Unlike partnership items, affected items are determined not at the partnership level, but at the individual partner level." *Petaluma FX Partners, LLC v. Comm'r,* 591 F.3d 649, 654 (D.C. Cir. 2010).

If the IRS decides to modify any partnership items on a partnership's informational income tax return, the IRS must issue a Notice of Final Partnership Administrative Adjustment ("FPAA") to notify the individual partners of the adjustment. I.R.C. § 6223; *see Kaplan*, 133 F.3d at 471-72 (detailing the differing notices required based on a partner's percentage ownership interest in the partnership). The FPAA sets forth the proposed adjustments as well as the grounds for those adjustments.

The time limit within which the IRS may issue an FPAA is dictated by two statutory sections, I.R.C. § 6229(a) and I.R.C. § 6501(a). I.R.C. § 6229(a) provides that

> the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of -- (1) the date on which the partnership return for such taxable year was filed, or (2) the

3

last day for filing such return for such year (determined without regard to extensions).

I.R.C. § 6501(a) states that "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)."

After the IRS issues an FPAA, the Tax Management Partner ("TMP"), for a limited time, has the exclusive option to file a petition for readjustment of the partnership items in Tax Court, the Court of Federal Claims, or a United States District Court. I.R.C. § 6226(a). The TMP acts as a liaison between the partnership and the IRS for any tax-related issues. I.R.C. § 6231(a)(7)(A). After the TMP's limited time to petition expires, other partners are allowed a window to file their own petitions for readjustment of partnership items. I.R.C. § 6226(b)(1). If a partner's tax liability might be affected by the final determination of partnership items, that partner may participate in the proceedings. I.R.C. §§ 6224(a), 6226(c). Upon final determination of partnership items, the IRS has one year to assess additional tax liability upon a partner. I.R.C. § 6229(d). If a partner wishes to challenge the assessed tax liability, the partner must first pay the assessment and then file an action for refund in a United States District Court. *Weiner v. United States,* 389 F.3d 152, 155 (5th Cir. 2004). Generally, a United States District Court has jurisdiction to hear a taxpayer's refund action where the amount claimed was either excessive or wrongfully collected. I.R.C. §§ 1340, 1346(a)(1). However, "[n]o action may be brought [in District Court] for a refund attributable to partnership items." I.R.C. § 7422(h).

## II. Factual Background

Kercher brings this tax refund action to recover payment of an IRS deficiency assessment. Kercher's suit arises out of his limited partner interest in Coachella-85 Partners ("C-85"), a limited partnership managed by American Agri-Corp ("AMCOR"). In 1985, Kercher purchased a 3.531% interest in C-85. Like other limited partnerships managed by AMCOR in the 1980s, C-85 was designed to provide individual investors with a tax shelter. C-85 was designed to generate a large loss in its first operating year; this loss would allow individual partners to offset other taxable income on their individual tax returns. After its first year, C-85 was expected to provide investors substantial gains so as to recapture the excess loss C-85 experienced in its first year of operations.

On March 27, 1985, C-85 filed its tax return claiming an ordinary loss deduction of $9,089,086.00. On April 15, 1985, Kercher filed his 1985 tax return which reported his allocated share of C-85's losses.

In 1987, the Internal Revenue Service ("IRS") began investigating a number of partnerships AMCOR managed, including C-85. In 1990 and 1991, the IRS issued FPAAs to 43 AMCOR partnerships regarding their respective 1985 tax returns. The IRS disallowed expenses and other deductions for several reasons, including partnership-level management activities. The IRS concluded that the partnership activities amounted to a series of "sham transactions."

The Tax Matters Partners of those partnerships, including the TMP for C-85, did not contest the proposed FPAA adjustments. To avoid default, partners other than the TMPs filed separate I.R.C. § 6226(b) partnership-level suits in Tax Court. Whether the FPAAs were barred by the statute of limitations was one of the specific issues litigated. Because of the large number of AMCOR partnership-level cases filed, the Tax Court selected seven partnership-level suits as representative

test cases for trial. However, each partnership, including C-85, executed a Stipulation to be Bound ("Stipulation"). In the Stipulation, C-85 agreed that "the outcome of the statute of limitations issue present in [the C-85] Partnership Case will be determined in a manner consistent with the [Tax] Court's findings of fact and law on the statute of limitations issue present in the Test Case Group of *Argi-Venture Fund*." A year later, in 2000, the Tax Court rejected the argument in the test cases that the FPAAs were barred by the statute of limitations. *Agri-Cal Venture Assocs. v. Comm'r.*, 80 T.C.M. (CCH) 295, at *23 (2000).

Instead of proceeding to trial in the remaining partnership cases, including the C-85 suit, the IRS chose to enter into contingent agreements with each remaining partnerships' TMP. At this same time, many of the partners chose to settle their partnership items with the IRS, Krercher did not. In the C-85 suit, the IRS represented the terms of its contingent agreement in three documents: 1) a Joint Status Report filed December 18, 2000; 2) a Motion for Entry of Decisions filed April 16, 2001; and 3) the C-85 Agreed Decision filed July 19, 2001. The Joint Status Report contained the finding that the "assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for tax years [1984, 1985, and 1986] set forth herein are not barred by the provisions of I.R.C. § 6229." The Motion for Entry of Decisions stated that the IRS and the TMPs reached a contingent agreement as to all of the disputed partnership items at issue. The Motion for Entry of Decisions indicated that all partners who meet the interest requirements of I.R.C. § 6226(d) would be bound by the entered decisions. The Motion for Entry of Decisions went on to state that if any partner objected to the proposed agreed decisions and those objections were not resolved in a timely manner, then the proposed agreed decisions would be withdrawn. There is no indication in the record that any objections were entered by any partners, including Kercher.

Pursuant to the IRS's Motion for Entry of Decisions, the Tax Court, on July 19, 2001, entered a decision in the C-85 suit. The Tax Court's decision reduced C-85's 1985 ordinary loss deduction from $9,089,086.00 to $4,816,084.00. The Tax Court reduced the deductible loss because the partnership's income and expenses were attributable to transactions lacking economic substance. The decision also stated that "the assessment of any deficiencies in income tax that are attributable to the adjustments to the partnership items for the year 1985 is not barred by the provisions of I.R.C. § 6229."

In accordance with the Tax Court's order, the IRS, on August 26, 2002, assessed tax and interest totaling $237,221.36 against Kercher for 1985. On May 18, 2005, Kercher paid the assessment in full and timely filed claims for a refund on the basis that the assessment was time-barred. The IRS denied Kercher a refund and he thereafter timely filed this suit.

### III. Legal Standard

The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual

record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

## IV. Discussion

### A. Pre-1997 Tax Court Practices

Kercher contends that he was unable to raise his I.R.C. § 6501(a)-based limitations claim before the Tax Court in the prior proceedings. According to Kercher, prior to the 1997 amendment to I.R.C. § 6226, I.R.C. § 6226(f) restricted the Tax Court from exercising jurisdiction over Kercher's I.R.C. § 6501(a) limitations period argument.[2] The Federal Circuit in *Prati v. United*

---

[2] The court in *Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r,* 114 T.C. 533, 546 (2000) identified the rationale for Congress' adoption of the 1997 amendment. The court noted that "[i]ndeed, in 1997, Congress recognized that the periods for assessing tax against

8

*States,* 603 F.3d 1301, 1307 n.4 (Fed. Cir. 2010) found that "the 1997 amendment merely codified prior practice in the Tax Court … as individual partners, were therefore free to participate in the partnership-level proceedings to litigate the statute of limitations issue."  Additionally, in *Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r.,* 114 T.C. 533, 535 (2000) the Tax Court stated that "we have held that a partner may participate in [a partnership-level] action for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired and that we have jurisdiction to decide whether that assertion is correct." *See Columbia Bldg., Ltd. v. Comm'r.,* 98 T.C. 607 (1992); *PCMG Trading Partners XX, L.P. v. Comm'r.,* 131 T.C. 206, 213 n.9 (2008) (holding that usually "the Court's jurisdiction in a partnership proceeding is restricted to determining 'partnership items'.  However, our jurisdiction over whether the period of limitations has expired as to individual partners presents an exception since the expiration of the period of limitations can depend on facts that are peculiar to the individual partners." (citations omitted)).  Similar to C-85's factual setting, the IRS in *Rhone-Poulenc* issued an FPAA with proposed adjustments on a partnership for a pre-1997 amendment tax year.  Given the Tax Court's stance that prior to the 1997 amendment it allowed taxpayers to present their statute of limitations claims, this Court adopts *Prati's* conclusion that individual partners were able to present their limitations period claims during partnership-level proceedings.

      Furthermore, the Motion for Entry of Decisions specifically stated that

---

individual partners may vary from partner to partner and specifically provided that an individual partner will be permitted to participate as a party in the partnership proceeding 'solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to *such person*'. *See* last sentence of sec. 6226(d)(1)(B) added to the Code by the Taxpayer Relief Act of 1997, Pub.L. 105-34, sec. 1239(b), 111 Stat. 1027-1028, effective for years ending after August 5, 1997." (emphasis added) (footnote omitted)

9

> [i]f any partner of the partnership files motion for leave to participate and is permitted by the Court to file an objection to this motion for entry of decision[s] pursuant to Tax Court Rule 248(b)(4) and such objection is not withdrawn or otherwise resolved within 90 days of the date on which this motion is filed, the tax matters partners and respondent stipulate that this motion of entry of decisions will be withdrawn by respondent.

Although the Motion for Entry of Decisions enabled Kercher to participate in the partnership-level proceedings, he did not exercise this right. The IRS would not have included language allowing individual partners to participate in the partnership-level proceedings unless it anticipated that some partners would seek to intervene. Such a clause merely establishes that the IRS sought to provide a mechanism by which individual partners could raise concerns at the partnership level; to find otherwise would render the clause superfluous.

In light of the Federal Circuit's findings in *Prati* and the language contained in the Motion for Entry of Decisions, Kercher was not barred, as he suggests, from raising his I.R.C. § 6501(a)-based limitations claim before the Tax Court.

***B. Jurisdiction***

Kercher's Motion for Summary alleges that the IRS's assessment of additional tax liability upon him regarding partnership items was untimely under I.R.C. § 6501(a). Kercher claims that because Kercher and C-85 both filed their 1985 tax returns effective April 15, 1986, I.R.C. § 6229(a) did not extend the deadline for which the IRS could assess additional liability. Kercher acknowledges that I.R.C. § 6501(a) and I.R.C. § 6229(a) operate in tandem to formulate the applicable statute of limitations. Kercher additionally concedes that the I.R.C. § 6229(a)–based statute of limitations is a partnership item. *Weiner*, 389 F.3d at 157-57 (adopting the reasoning that "because the FPAA limitations issue affects the partnership as a whole, it should not be litigated in

an individual partner proceeding"); *Keener v. United States,* 551 F.3d 1358, 1363-64 (Fed. Cir. 2009).

However, Kercher maintains that the I.R.C. § 6501(a)-based time limitation is a non-partnership item. Kercher reasons that the statute of limitations imposed on a partner is an affected item because it contains partnership – I.R.C. § 6229(a) – and non-partnership – I.R.C. § 6501(a) – components. As an affected item, Kercher urges that the limitations period is not a jurisdictional bar to judicial review in this Court. *See Petaluma,* 591 F.3d at 654 (holding that because outside bases are affected items, they are reviewed at the individual partner level after partnership items have been finalized at the partnership level). Kercher concludes that this Court retains jurisdiction to determine the non-partnership components of the limitations period, primarily I.R.C. § 6501(a).

During the pendency of this case, the Federal Circuit issued its opinion in *Prati*. *See Matthews v. United States,* 2010 WL 2305750 at *4 (W.D. Tex. 2010) (adopting *Prati*'s jurisdictional analysis in another AMCOR based partner level refund suit). The Federal Circuit addressed the exact issues raised by Kercher, specifically the interplay of I.R.C. § 6501(a) and I.R.C. § 6229(a).

The taxpayer in *Prati* alleged that the Federal Circuit's decision in *AD Global Fund, LLC v. United States,* 481 F.3d 1351, 1354 (Fed. Cir. 2007) held that I.R.C. § 6229(a) "does not create an independent statute of limitations." Thus, the taxpayer concluded that I.R.C. § 6501(a) was the only applicable statute of limitations period and that I.R.C. § 6229(a) should only be addressed when the Government separately asserts it. The Federal Circuit disagreed and held that

> [w]hen an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment. Thus, the limitations period is the period defined by

11

> section 6501, as extended when appropriate by section 6229. Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely.

*Prati*, 603 F.3d at 1307. The Federal Circuit specifically held that based on *Keener*, "the statute of limitations issue is a partnership item and that the [taxpayer was] required to raise the limitations issue in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court." *Id*; *Andantech L.L.C. v. Comm'r.*, 331 F.3d 972, 976-77 (D.C. Cir. 2003) (finding that "[t]he plain language § 6501 compels its applications to all assessments."). Therefore, the Federal Circuit denied jurisdiction under I.R.C. § 7422(h) to address the taxpayer's I.R.C. § 6501(a) limitations period argument in a refund proceeding. *Id.*

This Court finds the Federal Circuit's analysis in *Prati* persuasive. Although Kercher labels this as merely a results-oriented interpretation, any other reading would produce an impracticable result. The dual purposes of TEFRA were to create a single unified procedure for determining partnership-level tax liability and to ensure equal treatment of partners. *Chimbio v. Comm'r.,* 177 F.3d 119, 125 (2nd Cir. 1999). To allow taxpayers the ability to simply bring individual partner-level suits in district courts to obtain different rulings on the limitations period would contravene the Tax Court's substantive statute of limitations decision. If Kercher were able to raise his I.R.C. § 6501(a) limitations period argument before this Court, it would render the Tax Court's determination on the statute of limitations meaningless. Kercher's interpretation of the relationship between I.R.C. § 6501(a) and I.R.C. § 6229(a) would allow some partners a second opportunity in district court to challenge the assessed deficiency. Thus, some partners would be required to pay the assessed tax deficiency, while others would not. Kercher's advocated position would circumvent TEFRA's goal of preventing fragmented, duplicative, and inconsistent separate partnership proceedings.

Kercher alleges that the Federal Circuit's analysis in *AD Global* and subsequently in *Petaluma* and *Curr-Spec Partners, L.P. v. Comm'r.,* 579 F.3d 391 (5th Cir. 2009) is controlling on the issue under the TEFRA statutory framework. Kercher's reliance on this line of case law is misguided. These cases do not implicate that the limitations period is an affected item. The Court finds each of these cases distinguishable from Kercher's refund action.

*AD Global* confirmed the proposition that I.R.C. § 6229(a) did not create an independent limitations period, but rather I.R.C. § 6501(a) and I.R.C. § 6229(a) worked together to create a single limitations period. *AD Global*, 481 F.3d at 1354-55. *AD Global* dealt with the actual application of the limitations period, not whether the court – as an initial matter – retained jurisdiction to hear the dispute. Turning to *Petaluma*, that case found that partners' outside bases were an affected item that the Tax Court improperly adjudicated as a partnership item. *Petaluma*, 591 F.3d at 654. This Court finds no meaningful similarities between a partner's outside basis and a partner's limitations period.[3] A partner's outside basis can be analyzed independently of partnership items, whereas the limitations period cannot be bifurcated into its component parts for consideration. I.R.C. § 6501(a) and I.R.C.

---

[3] Partnerships have two forms of basis, inside basis and outside basis. Inside basis reflects the partnership's basis in its own assets, and can be divided by each partner's proportionate share. Conversely, outside basis is an individual partner's basis in his/her partnership interest. Although outside basis begins as the partner's original investment, it can vary independently thereafter from inside basis, for example, through the transfer of the partner's interest by inheritance or sale. For instance, say Partner A and Partner B each invests $5,000 in a partnership and the partnership buys a piece of property for $10,000. Without considering profits, losses, or distributions, say the property appreciates to $20,000. Then, Partner A gives to his son his partnership interest as a gift. Because it is a gift, Partner A's son would take his father's basis of $5,000. On the other hand, if Partner B died and passed her partnership interest to her daughter, her daughter would be able to claim the fair market value of the interest as her outside basis, $10,000. The son and daughter's inside basis each remains unchanged at $5,000. As is apparent, the calculation of a partner's outside basis can be reached independently from calculating the partnership's inside basis.

§ 6229(a) are inextricably intertwined and must be analyzed as a single limitation. *Prati,* 603 F.3d at 1307 (establishing that "[s]ections 6501 and 6229 operate in tandem to provide a single limitations period.").

Lastly, Kercher relies on *Curr-Spec* as the Fifth Circuit's application of *Petaluma*. But again, Kercher's reliance on this line of reasoning is misplaced. The taxpayer in *Curr-Spec*, a limited partnership, alleged that the Tax Court was without jurisdiction to consider a partner's individual tax return filing date because it was a non-partnership item. *Curr-Spec*, 579 F.3d at 395. As to the jurisdictional issue, *Curr-Spec* held that in partnership level litigation and "[a]rmed with Congress's express blessing, the Tax Court does not exceed its jurisdiction when it considers the filing date of a partner's individual return." *Curr-Spec*, 579 F.3d at 396. The natural consequence of this is that in any subsequent partner-level litigation, a court would be prohibited from revisiting the limitations period issue. *See Duffie*, 600 F.3d at 386 (holding that claim preclusion or *res judicata* barred the court from reviewing partnership items already resolved by the Tax Court.).

## V. Conclusion

Given the persuasive nature of *Prati*, this Court lacks jurisdiction under I.R.C. § 7422(h) to consider the merits of Kercher's I.R.C. § 6501(a) limitations period argument.

For the reasons discussed above, the Government's Cross-Motion for Summary Judgment (Doc. #28) is hereby **GRANTED**, and Plaintiff's Motion for Summary Judgment (Doc. #25) is **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 16th day of November, 2010.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

14