# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **KENNETH A. KERCHER, and** | § | |
| **SUZANNE B. KERCHER** | § | |
| | § | |
| **v.** | § | **Case No. 4:07-cv-310** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States of America's ("Government") Motion for Summary Judgment and Brief in Support (Dkt. #47), Plaintiffs Kenneth A. Kercher ("Kercher") and Suzanne B. Kercher's[1] Motion for Summary Judgment Based on a Void or "Naked" Assessment (Dkt. #48), and the Kerchers' Alternative Motion for Partial Summary Judgment Based on Interest Assessed Under 26 U.S.C. § 6621(c) (Dkt. #49). Based upon his interest in a limited partnership, the IRS increased Kercher's federal income tax for 1985 and also imposed penalty interest. Kercher paid the assessments and now claims he is entitled to a refund. Kercher alleges two grounds for a refund. First, Kercher argues that the Internal Revenue Service's ("IRS") increased tax assessment was a "naked" assessment and is therefore void. Second, Kercher contends that the IRS improperly imposed penalty interest under 26 U.S.C. § 6621(c).[2] Having fully considered the parties' arguments, the undisputed facts, and the applicable law, the Government's motion for summary judgment (Dkt. # 47) is **GRANTED** and the Kerchers' motions for summary judgment (Dkt. #48, #49) are **DENIED**.

---

[1] Although Suzanne B. Kercher is a party to this suit only because she filed a joint return with her husband, this Memorandum Opinion and Order applies equally to both Kenneth A. Kercher and Suzanne B. Kercher.

[2] The Court previously dismissed Kercher's 26 U.S.C. § 6501(a) limitations-based claim for lack of jurisdiction (Dkt. #35). Additionally, in light of *Hinck v. United States*, 550 U.S. 501 (2007), Kercher withdraws his claim that interest should have been abated under 26 U.S.C. § 6404(e).

# I.  STATUTORY FRAMEWORK

Prior to 1982, the taxation of partnerships was a dismal affair. Partnerships filed informational income tax returns which reflected the distributive shares of income, gains, deductions, and credits attributable to their individual partners.  When the IRS sought to adjust an item on a partnership return, it would essentially entail an audit of each partner's individual tax return.  This methodology not only squandered resources, but it also produced inconsistent results and duplicative litigation.   In an effort to revise the statutory scheme for auditing partnerships, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Publ.L. No. 97-248, § 402(a) 96 Stat. 324, 648-71 (1982) ("TEFRA").  "Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998).

The new law avoided duplicative litigation by requiring that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment of a partnership item) shall be determined at the partnership level." 26 U.S.C. ("I.R.C.") § 6221.   Although TEFRA still requires partnerships to file informational income tax returns, partnerships themselves are not subject to federal income taxation.  Congress' enactment of TEFRA ensured that individual partners became responsible for reporting their *pro rata* share of the partnership's tax on their individual income tax returns. *See* I.R.C. § 701.  TEFRA thereby "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002).

An initial determination of whether an item is a "partnership item" dictates whether TEFRA applies. A "partnership item" under TEFRA is defined as "any item required to be taken into account for the partnership's taxable year under any provisions of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). The Treasury Regulations clarify TEFRA's definition of "partnership item" as "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)-1(b). Conversely, a nonpartnership item is any item which is not a partnership item. I.R.C. § 6231(a)(4). Unlike partnership items, nonpartnership items receive tax treatment at the individual partner level. *Duffie v. United States*, 600 F.3d 362, 366 (5th Cir. 2010).

Affected items, categorized as a hybrid third category of TEFRA items, also exist. "Affected items" are defined as "any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5). As such, affected items can have both partnership item and nonpartnership item components. *See Duffie*, 600 F.3d at 366 (explaining in detail two different types of affected items and their implications for partnership taxation). "Unlike partnership items, affected items are determined not at the partnership level, but at the individual partner level." *Petaluma FX Partners, LLC v. Comm'r,* 591 F.3d 649, 654 (D.C. Cir. 2010).

If the IRS decides to modify any partnership items on a partnership's informational income tax return, the IRS must issue a Notice of Final Partnership Administrative Adjustment ("FPAA") to notify the individual partners of the adjustment. I.R.C. § 6223; *see Kaplan*, 133 F.3d at 471-72 (detailing the differing notices required based on a partner's percentage

ownership interest in the partnership). The FPAA sets forth the proposed adjustments as well as the grounds for those adjustments.

The time limit within which the IRS may issue an FPAA is dictated by two statutory sections, I.R.C. § 6229(a) and I.R.C. § 6501(a). I.R.C. § 6229(a) provides that

> the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of -- (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions).

I.R.C. § 6501(a) states that "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)."

After the IRS issues an FPAA, the Tax Management Partner ("TMP"), for a limited time, has the exclusive option to file a petition for readjustment of the partnership items in Tax Court, the Court of Federal Claims, or a United States District Court.  I.R.C. § 6226(a).  The TMP acts as a liaison between the partnership and the IRS for any tax-related issues.  I.R.C. § 6231(a)(7)(A).  After the TMP's limited time to petition expires, other partners are allowed a window to file their own petitions for readjustment of partnership items.  I.R.C. § 6226(b)(1).  If a partner's tax liability might be affected by the final determination of partnership items, that partner may participate in the proceedings.  I.R.C. §§ 6224(a), 6226(c).  Upon final determination of partnership items, the IRS has one year to assess additional tax liability upon a partner.  I.R.C. § 6229(d).

When calculating a partner's additional tax liability, the IRS, under I.R.C. § 6621(c)[3], may assess penalty interest at an enhanced rate of 120% of the statutory rate if the additional liability was based upon "substantial underpayments attributable to tax motivated transactions." I.R.C. § 6621(c)(1). A substantial underpayment is any underpayment exceeding $1,000 for the tax year in question. I.R.C. § 6621(c)(2). Tax motivated transactions ("TMT") may include "any sham or fraudulent transaction," I.R.C. § 6621(c)(3)(A)(v), or any use of an accounting method that may result in a substantial distortion of income, I.R.C. § 6621(c)(3)(A)(iv). *See Duffie*, 600 F.3d at 373.

If a partner wishes to challenge the assessed tax liability, the partner must first pay the assessment and then file an action for refund in a United States District Court. *Weiner v. United States,* 389 F.3d 152, 155 (5th Cir. 2004). Generally, a United States District Court has jurisdiction to hear a taxpayer's refund action where the amount claimed was either excessive or wrongfully collected. I.R.C. §§ 1340, 1346(a)(1). However, "[n]o action may be brought [in District Court] for a refund attributable to partnership items." I.R.C. § 7422(h).

## II. FACTUAL BACKGROUND

Kercher brings this tax refund action to recover payment of an IRS underpayment assessment. Kercher's suit arises out of his limited partner interest in Coachella-85 Partners ("C-85"), a limited partnership managed by American Agri-Corp ("AMCOR"). In 1985, Kercher purchased a 3.531% interest in C-85. Like other limited partnerships managed by AMCOR in the 1980s, C-85 was designed to provide individual investors with a tax shelter. C-85 was designed to generate a large loss in its first operating year; this loss would allow individual partners to offset other taxable income on their individual tax returns. After its first year, C-85

---

[3] Congress repealed I.R.C. § 6621(c) in 1989. However, neither party disputes that it was applicable to the tax year in question.

was expected to provide investors substantial gains so as to recapture the excess loss C-85 experienced in its first year of operations.

On March 27, 1985, C-85 filed its tax return claiming an ordinary loss deduction of $9,089,086.00.  On April 15, 1985, Kercher filed his 1985 tax return which reported his allocated share of C-85's losses.

In 1987, the IRS began investigating a number of partnerships AMCOR managed, including C-85.  In 1990 and 1991, the IRS issued FPAAs to forty-three AMCOR partnerships regarding their respective 1985 tax returns.  The IRS disallowed expenses and other deductions for several reasons, including partnership-level management activities. The IRS concluded that the partnership activities amounted to a series of "sham transactions."

The TMPs of those partnerships, including the TMP for C-85, did not contest the proposed FPAA adjustments.  The FPAA adjustments listed several independent grounds for the disallowance. The reasons included that "[t]he partnership's activities constitute[d] a series of sham transactions" and that "[t]he partnership's activities lack[ed] economic substance." Notice of Final Partnership Administrative Adjustment, (Dkt. #25-3 at 30).

To avoid default, partners other than the TMPs filed separate I.R.C. § 6226(b) partnership-level suits in Tax Court.  Whether the FPAAs were barred by the statute of limitations was one of the specific issues litigated. Because of the large number of AMCOR partnership-level cases filed, the Tax Court selected seven partnership-level suits as representative test cases for trial. *See generally Agri-Cal Venture Assocs. v. Comm'r*, 80 T.C.M. (CCH) 295 (2000).

Instead of proceeding to trial in the remaining partnership cases, including the C-85 suit, the IRS chose to enter into contingent agreements with each remaining partnerships' TMP.  At

this same time, many of the partners chose to settle their partnership items with the IRS, Kercher did not.  In the C-85 suit, the IRS represented the terms of its contingent agreement in three documents: 1) a Joint Status Report filed December 18, 2000 (Dkt. #49-1 at 2–9); 2) a Motion for Entry of Decisions filed April 16, 2001 (Dkt. #49-1 at 10–25); and 3) the C-85 Agreed Decision filed July 19, 2001 (Dkt. #49-1 at 26–27).  The Motion for Entry of Decisions stated that the IRS and the TMPs reached a contingent agreement as to all of the disputed partnership items  at issue.  The Motion for Entry of Decisions also indicated that all partners who meet the interest requirements of I.R.C. § 6226(d) would be bound by the entered decisions.  The Motion for Entry of Decisions went on to state that if any partner objected to the proposed agreed decisions and those objections were not resolved in a timely manner, then the proposed agreed decisions would be withdrawn.  There is no indication in the record that any objections were entered by any partners, including Kercher.

Pursuant to the IRS's Motion for Entry of Decisions, the Tax Court, on July 19, 2001, entered a decision in the C-85 suit.  The Tax Court's decision reduced C-85's 1985 ordinary loss deduction from $9,089,086.00 to $4,816,084.00.  The Tax Court reduced the deductible loss because the partnership's income and expenses were attributable to transactions lacking economic substance.

On or about July 15, 2002,[4] the IRS mailed Kercher a notice of computation adjustment, which included a number of documents, including Form 4549A, Income Tax Examination Changes.  Kercher's Form 4549A indicated an increase of $150,879.00 in ordinary income, and therefore, an increase in tax liability of $41,683.00. Although the Form 4549A referenced subjecting Kercher to penalty interest, the summary of taxes, penalties, and interest section of the

---

[4] The letter that transmitted the Form 4549A was dated July 10, 2002. Dkt. #25-6 at 10.  Yet, the Form 4549A itself was dated July 15, 2002. Dkt. #25-6 at 12.  For purposes of this Order, the Court will treat July 15, 2002 as the mailing date of the of the notice of computational adjustment.

form indicated that his penalty interest due through August 14, 2002 was "0.00" (Dkt. #25-6 at 12).

In accordance with the Tax Court's order, the IRS, on August 26, 2002, assessed $41,683.00 of additional tax and $195,538.36 of penalty interest against Kercher for 1985.  On May 18, 2005, Kercher paid the assessment in full and filed a refund claim with the IRS.  The IRS denied Kercher's refund claim on June 27, 2005.  Kercher thereafter filed this suit.

### III.  LEGAL STANDARD

The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008).  A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326.  When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie*, 600 F.3d at 371 (internal quotation omitted).  If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted).   If the movant meets the burden,

however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996).   The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

## IV. DISCUSSION

As an initial matter, the Government alleges the Court is without subject matter jurisdiction to address the merits of Kercher's refund claim. Kercher disagrees.   Kercher additionally argues that the additional tax assessment by the IRS was void as a "naked" assessment and that the penalty interest calculated under I.R.C. § 6621(c) was improper.   The Court will address each issue in turn.

### A. Jurisdiction

As the basis for its jurisdictional challenge, the Government contends that Kercher failed to timely file his refund claim within six months of the IRS sending Kercher a notice of computational adjustment.   It is undisputed that the IRS mailed Kercher a notice of computation adjustment, including Form 4549A, on or about July 15, 2002.   Subsequently, Kercher filed his refund claim on May 18, 2005, well after the expiration of the six-month deadline.   The Government concludes that Kercher's failure to timely file a refund claim deprives the Court of subject matter jurisdiction.   Kercher responds that the six-month filing period never began to run because the IRS's notice of computational adjustments was deficient.

Kercher carries the burden of proving subject matter jurisdiction. *McGann v. United States*, 76 Fed. Cl. 745, 749 (2007) (citing *McNutt v Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).  As a sovereign, the United States is generally immune from suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  But the United States has waived immunity and consented to taxpayer refund suits in district court. 28 U.S.C. § 1346(a)(1).  In order to maintain a refund action, a taxpayer must observe strict compliance with the time period within which a taxpayer must file a refund claim. *United States v. Dalm*, 494 U.S. 596, 602 (1990).  Failure to timely file a refund claim with the IRS divests the Court of subject matter jurisdiction. *Gustin v. United States*, 876 F.2d 485, 488 (5th Cir. 1989).  Accordingly, the Court must first determine whether Kercher timely filed his refund claim with the IRS.

The limitations period for filing a refund claim with the IRS is "the later of two years from the time the tax was paid or three years from the time the tax return was filed." *Duffie*, 600 F.3d at 385; I.R.C. § 6511(a).  If the taxpayer seeks a refund for an overpayment attributable to a partnership item or an affected item, TEFRA dictates that a shorter six-month limitations period applies. I.R.C. § 6230(c)(2)(A).  The time limitations period begins to run when "the Secretary mails the notice of computational adjustment to the partner." *Id.*

Importantly, there are two different types of affected items: computational affected items (or computational adjustments) and substantive affective items.  For computational affected items, the TEFRA time requirements apply. *Duffie*, 600 F.3d at 385; *see* I.R.C. § 6230(c)(2)(A). Refund claims based on substantive affected items are governed by the general limitations period described in I.R.C. § 6511.  The Government advocates that both the additional tax assessment and the penalty interest fall within computational affected items, while Kercher maintains that both assessments are more properly considered as substantive affected items.

### i.   Additional Tax Assessment

Within the Tax Code, computational affected items are defined as:

> the change in tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

I.R.C. § 6231(a)(6).   Assessments are classified as computational affected items "when they require 'no individualized factual determinations' as to the correctness of the original partnership items or 'any other factual matters such as the state of mind of the taxpayer upon filing.'" *Bush v. United States*, 655 F.3d 1323, 1330 (Fed. Cir. 2011) (quoting *Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999)).   "[W]hen critical questions of fact have been resolved, then 'application of that stipulated fact to the tax returns in question requires only computational action.'" *Id.*   In other words, "where no further factual determinations are necessary at the partner level, an assessment attributable to an 'affected item' may also be made by computational adjustment" since determining the partner's additional tax liability "is a mathematical calculation and requires no further factual finding." *Callaway v. Comm'r*, 231 F.3d 106, 110, 110 n.4 (2d Cir. 2000).

Kercher contends that the IRS's imposition of additional tax in the amount of $41,683.00 cannot be classified as a computational affected item.   Kercher argues that the IRS did not impose the additional liability based on Kercher's actual returns, but rather that the IRS only estimated his liability because it lost part of his administrative file.   Specifically, Kercher maintains that he sent the IRS an amended return, Form 1040X, but that the IRS did not properly account for the amended return when calculating Kercher's additional tax liability.   The Government responds that it has no record of Kercher ever submitting a Form 1040X.   When requested by the IRS to produce his Form 1040X, Kercher was only able to provide a copy of the first page of the document.

Kercher maintains that the IRS's assessment could not have been simply a mathematical application of the partnership item adjustments because the IRS was aware that it did not have Kercher's Form 1040X. The Court disagrees.

The Court finds that no further factual determinations were necessary before the IRS calculated Kercher's additional tax liability.  Kercher's dispute is limited to whether the IRS had sufficient documentation to make an accurate calculation.  The IRS responds that it had ample information from Kercher's filings to adequately calculate the increased tax assessment. Importantly, Kercher does not object to his allocation of the partnership's adjustment.  Kercher also does not dispute the final calculated amount of additional taxes owed or provide any independent calculation of his own.  Furthermore, Kercher does not address how any additional information or data would have affected the IRS's calculation.  Kercher only contends that the IRS did not have a sufficient documentary basis for makings its calculation.  But it is undisputed between the parties that, at a minimum, the IRS had before it Kercher's original Form 1040. Based on Kercher's Form 1040 and the database of information the IRS relied upon, it is evident that no further factual findings were necessary prior to the IRS calculating Kercher's increased tax liability.  Therefore, the IRS's application of the partnership adjustments to Kercher remains a computational action.

Kercher never identifies what partner-specific issues had to be determined at the partner level prior to the IRS imposing the additional tax liability.  Kercher's disagreement with the basis for the IRS's computation does not change the fact that the IRS's determination of the additional tax liability was entirely mechanical.  Because no further factual findings were necessary prior to the IRS imposing the additional tax liability on Kercher, the assessment is properly classified as a computational affected item.

Since the additional tax liability is a computational affected item, Kercher was required to file his refund as to this claim within TEFRA's six-month limitations period. *See* I.R.C. § 6230(c)(2)(A); *Duffie*, 600 F.3d at 386.  He did not.  However, Kercher argues that the notice of computational adjustment which triggers the start of the six-month period was deficient.

The IRS mailed Kercher a notice of computational adjustment, including Form 4549A, Income Tax Examination Changes.  The Form 4549A clearly increased Kercher's tax liability for 1985 by $41,683.00 (Dkt. #25-6 at 93).   It is unmistakable from lines fourteen, sixteen, and nineteen of the Form 4549A that Kercher's income tax was increased by $41,683.00 (Dkt. #25-6 at 93).

In *McGann v. United States*, a partner sought a refund of penalty interest stemming from his underpayment of taxable income resulting from partnership activities. 76 Fed. Cl. at 745. The partner received a letter, transmitting Form 4549A along with Form 886-A, Explanation of Items.  The Form 4549A clearly stated that the additional tax due was $8,620.00. *McGann*, 76 Fed. Cl. at 759.  The court found that the "forms unquestionably gave notice to Mr. and Mrs. McGann that their tax liability for the 1983 tax year was increased by $8,620.00." *McGann*, 76 Fed. Cl. at 759; *see* Motion to Dismiss, *McGann v. United States*, No. 1:05-cv-01189-CFL, (Fed. Cl. Aug. 17, 2006) (Dkt. #13-3 at 3–6).

As in *McGann,* Kercher's Form 4549A undeniably provided him adequate notice of his additional tax liability.  Accordingly, the notice of computational adjustment sufficiently notified Kercher of his increased liability.  Thus, the six-month limitations period began to run when the IRS sent Kercher his notice of computational adjustment.

The IRS mailed Kercher a notice of computational adjustment on or about July 15, 2002. Kercher subsequently filed his refund claim on May 18, 2005, well after the expiration of the six-

month deadline.   Since Kercher did not comply with TEFRA's time limitations, the Court is without subject matter jurisdiction over Kercher's refund claim as it pertains to the additionally assessed tax. *See Duffie*, 600 F.3d at 384 (explaining that "[a] taxpayer's failure to file a timely refund claim with the IRS deprives the district court of subject-matter jurisdiction").

### *ii.  Penalty Interest*

Kercher also challenges the validity of the penalty interest charged against him pursuant to I.R.C. § 6621(c).   The Government raises two separate grounds for why the Court lacks jurisdiction over Kercher's penalty interest claim.   First, the Government claims Kercher failed to timely file his refund claims within TEFRA's shortened six-month limitations period. *See* I.R.C. § 6230(c)(2)(A).   Second, the Government argues that the penalty interest is a partnership item that cannot be addressed in partner-level proceedings. *See* I.R.C. § 7422(h).

### 1.  Six-Month Limitations Period

In order to determine whether TEFRA's six-month limitations period applies, the Court must initially determine whether penalty interest assessed under I.R.C. § 6621(c) is a computational affected item.   In *Duffie*, the Fifth Circuit held, based on substantially identical facts to this case, that "the IRS's assessment of interest under Section 6621(c) is a computational affected item." *Duffie*, 600 F.3d at 386.   *Duffie* involved another AMCOR partnership in which the IRS disallowed certain expense deductions, which decreased the partnership's loss for 1984. As such, the individual partners had underpaid their income tax liability for that year.   The IRS additionally imposed penalty interest for their underpayments pursuant to I.R.C. § 6621(c).   The facts of *Duffie* mirror those in this case.   Here, as in *Duffie*, the Tax Court determined that the adjustments to partnership expenses were attributable to TMTs.   Thus, the Court finds that the IRS's assessment of penalty interest pursuant to I.R.C. § 6621(c) against Kercher is a

computational affected item.  Because the interest assessment is a computational affected item, Kercher must have filed his refund within TEFRA's six-month limitations period. *See* I.R.C. § 6230(c)(2)(A); *Duffie*, 600 F.3d at 386.

Although Kercher disagrees with the classification of I.R.C. § 6621(c) penalty interest as a computational affected item, Kercher again argues that his notice of computational adjustment from the IRS—which triggers the start of the six-month limitations period—was deficient.  In support of his argument, Kercher cites to a single relevant authority, *McGann v. United States*, for determining the adequacy of a notice of computational adjustment for purposes of I.R.C. § 6621(c). 76 Fed. Cl. at 745, *see* I.R.C. § 6230(c)(2)(A).  The Government does not respond to this argument or provide any contrary legal authority.

In *McGann*, a partner sought a refund of the penalty interest he was assessed by the IRS for his underpayment of taxable income resulting from the IRS's adjustment of partnership activities.  The partner received a letter dated February 28, 2003, transmitting Form 4549A along with Form 886-A.  The Form 4549A clearly stated that the additional tax due, $8620.00, was "attributable [to] Tax Motivated Transactions [for which] TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with [former] IRC § 6621(c)." *McGann*, 76 Fed. Cl. at 759.

Although the Form 4945A in *McGann* stated that interest would accrue under the enhanced rate, it also showed "0.00" for "TMT Interest – computed 03/22/2003 on TMT underpayment." *Id.*  Based on the Form 4549A which stated "0.00" due for TMT interest, the court concluded that the notice of computational adjustment did not indicate that the IRS intended to apply an enhanced rate pursuant to I.R.C. § 6621(c).  Ultimately, the court found the notice of computational adjustment was inadequate within the meaning of I.R.C. § 6230(c)(2)(A)

for imposing penalty interest under I.R.C. § 6621(c).   As such, the court found the notice insufficient to trigger the six-month limitations period of I.R.C. § 6230(c)(2)(A) for filing a refund claim. *Id.* at 761.

Here, the notice of computational adjustment is nearly identical to that in *McGann*. Kercher's Form 4549A stated that his additional $41,683.00 of tax liability was "attributable [to] Tax Motivated Transactions [for which] TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c)" (Dkt. #25-6 at 12).   As in *McGann*, the Form 4549A also stated that "TMT interest – computed 8/14/200 on TMT underpayment" was "0.00"[5] (Dkt. #25-6 at 12).   All of the language in Kercher's Form 4549A mimics the language in the documents in *McGann*.   Although Kercher's Form 4549A indicates that interest will accrue at the enhanced rate, it shows "0.00" as the amount of interest accrued through August 14, 2002.

The Court finds the analysis in *McGann* persuasive on this issue.   The IRS's notice of computational adjustment did not adequately disclose to Kercher that he would be liable for penalty interest.   Based on the information in the notice of computational adjustment, the IRS gave no indication that it was *actually* charging Kercher penalty interest.   To find otherwise would only promote this misleading practice.   Therefore, the IRS's notice of computational adjustment was defective and insufficient to trigger the six-month limitations period.

The general limitations period under I.R.C. § 6511(a) only requires that a refund claim be filed within two years of payment or three years from the date the tax return was filed.   In this case, Kercher paid his assessment on October 6, 2004, and filed his refund claim on May 18,

---

[5] Although the form lists the date as "8/14/200," the correct date, as indicated on the form's immediately preceding line item, is August 14, 2002 (Dkt. #25-6 at 12).

2005. Accordingly, the limitations issue does not deprive the Court of subject matter jurisdiction because Kercher timely filed his refund claim in regards to penalty interest.

### 2.   I.R.C. § 7422(h) as a Bar to Jurisdiction

The Government's second independent ground for challenging the review of Kercher's penalty interest is that I.R.C. § 7422(h) is a bar to the Court's jurisdiction.  The Government argues that Kercher's claim would require the Court to determine partnership items that are not reviewable in partner-level proceedings.  According to the Government, a review of penalty interest is more properly made at the partnership level.  Kercher, relying on *Duffie*, responds that I.R.C. § 7422(h) is not a jurisdictional bar to determine whether Kercher's assessment was attributable to transactions previously determined to be TMTs. *See Duffie*, 600 F.3d at 382 (explaining that a partner "may dispute and litigate in a partner-level proceeding the nonpartnership-item components of Section 6621(c) interest [including] whether it was attributable to the transaction previously determined to be tax motivated").  However, the substance of Kercher's argument is that he does not believe that there was ever a prior determination of a TMT at the partnership level.

As previously explained, affected items have both nonpartnership and partnership components.  It is undisputed that penalty interest under I.R.C. § 6621(c) is an "affected item" under I.R.C. § 6231(a)(5). *See Duffie*, 600 F.3d at 381.  The nonpartnership-item components of I.R.C. § 6621(c) are whether a partner's underpayment was "substantial" (meaning $1,000 or greater) and whether the partner's underpayment was attributable to a partnership-level TMT. *Id.* The partnership-item component of I.R.C. § 6621(c) "is whether the partnership transaction at issue actually was a TMT." *Acute Care Specialists II, Ltd. v. United States*, No. 11 C 465, 2011 WL 6318733, at *7 (N.D. Ill. Dec. 14, 2011) (citing *Duffie*, 600 F.3d at 378).  The Government

argues that Kercher is attacking partnership-item components, while Kercher maintains he is only addressing nonpartnership-item components.

Citing to *Duffie*, Kercher argues that the Court must first address whether *res judicata* applies to the Tax Court's partnership-level proceedings prior to determining whether I.R.C. § 7422(h) applies. *See Duffie*, 600 F.3d at 372–82.  The Court disagrees.  In *Duffie*, the court addressed *res judicata* as an alternate ground for denying jurisdiction.  *Duffie* did not analyze the *res judicata* issue as a prerequisite to reaching I.R.C. § 7422(h). *See Duffie*, 600 F.3d at 382; *Keener v. United States*, 551 F.3d 1358, 1365 (Fed. Cir. 2009); *Rowland v. United States*, No. 7:07-cv-18-O, 2011 WL 2516170, at *13–14 (N.D. Tex. June 22, 2011).  The Court does not believe that it is either necessary or required to address any *res judicata* claim prior to examining I.R.C. § 7422(h).

I.R.C. § 7422(h) states that partners cannot bring individual partner-level actions "for a refund attributable to partnership items." I.R.C. § 7422(h).  "Thus, the applicability of § 7422(h) turns on whether Taxpayers' refund claims are 'due to, caused by, or generated by' a partnership item." *Keener*, 551 F.3d at 1365 (quoting *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330–31 (Fed. Cir. 2007)).

In *Keener*, the partners argued that the IRS improperly imposed penalty interest on them because their underpayments were not attributable to TMTs.  The court found that the partners' position that the partnerships' transactions were not "shams" would amount to a review of a partnership item. *Keener*, 551 F.3d at 1366–67.  The court found that the assessment of whether a partnership's transaction amounts to a "sham" and consequently a TMT is a partnership item determination. *Id.* at 1366.  The court ultimately concluded that the partners' refund claim was "attributable to" partnership items and that I.R.C. § 7422(h) barred review.  As in *Keener*,

Kercher seeks a refund based upon the nature of the partnership's transaction.  Since the nature of the partnership's transaction is a partnership item, Kercher's claim is "attributable to" a partnership item and is therefore barred under I.R.C. § 7422(h).

The partners in *Keener* also raised a separate argument that "*no* partnership-level determination has been made that the transactions were tax motivated." *Id.* at 1367.  Kercher raises this same issue.  The FPAAs in *Keener* listed multiple, independent grounds for the disallowance. *Id.* at 1367.  Some of the grounds qualified as TMTs, including the reason that "[t]he partnership's activities constitute[d] a series of sham transactions." *Id.*; *see* I.R.C. § 6621(c)(3)(A)(v) (stating that a "sham or fraudulent transaction" is a "tax motivated transaction").  Although the FPAAs listed several grounds for the disallowance, the court in *Keener* held the additional reasons for the disallowance did not affect the finding that the transactions were tax motivated.  *Keener*, 551 F.3d at 1367 (stating that it would be inequitable "to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivation, but *not* to impose penalty interest when that deduction is also disallowable on other inseparable grounds").

Here, the justifications for the disallowance in the partnership's FPAA included that "[t]he partnership's activities constituted a series of sham transactions" and that "[t]he partnership's activities lack[ed] economic substance." Notice of Final Partnership Administrative Adjustment (Dkt. #25-3 at 30).  Additionally, the partnership's Agreed Decision in the Tax Court stated that:

> [the] adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting. [And] [t]hat liabilities in the amount of $5,326,624 lack economic substance."

*Coachella-85 Partners v. Comm'r*, No. 15057-91 (July 19, 2001); Agreed Decision (Dkt. #49-1 at 82).

Based on the language in the FPAA and the Agreed Decision, it is evident that Kercher's penalty interest refund claim is directed to the nature of the partnership transaction, and is therefore barred under I.R.C. § 7422(h).

The Federal Circuit was presented with a similar issue in *Prati v. United States*, 603 F.3d 1301, 1309 (Fed. Cir. 2010). *Prati* involved another AMCOR partnership case in which a partner brought a partner-level suit for a refund of penalty interest. Based on substantially similar facts, the court found that "[t]he Tax Court's decision clearly equated lack of economic substance with 'sham transaction' by specifically citing I.R.C. § 6621(c)(3)(A)(v), the provision that defines tax-motivated transactions as including 'any sham or fraudulent transaction.'" *Prati*, 603 F.3d at 1309. The language in the Agreed Decision in this case tracks that in *Prati*. Kercher fails to distinguish his contentions from those raised in *Prati. See Rowland*, 2011 WL 2516170, at *13–14 (rejecting the same issues raised by Kercher in an unrelated partner-level AMCOR partnership case).

The Court finds that Kercher's argument on whether the Tax Court ever made a determination at the partnership-level of a TMT is nevertheless an inquiry into a partnership item. "That question is no less 'attributable to partnership items' than the question of whether the underlying transactions were themselves TMTs." *Acute Care Specialists*, 2011 WL 6318733, at *8. If the Court were allowed to revisit whether the adjustments to partnership income and expenses were attributable to TMTs, the Court would be disregarding TEFRA's main purpose of conducting uniform proceedings as to partnership-level items. *See Duffie*, 600 F.3d at 384 ("TEFRA's goal of uniformity is accomplished by channeling challenges to the adjustment of

partnership items into a single, unified proceeding. This goal would be undermined if a partner who participated in such a proceeding was able subsequently to challenge the partnership-level adjustments made in that proceeding in an individual refund action."); *Acute Care Specialists*, 2011 WL 6318733, at *8 (finding I.R.C. § 7422(h) a bar to an I.R.C. § 6621(c) refund action in part because the partners' "claims depend[ed] on factual allegations that concern the nature of the partnerships' agreements and are therefore common to all partners in each partnership"). Accordingly, Kercher's refund claim as to penalty interest under I.R.C. § 6621(c) is barred by I.R.C. § 7422(h).

## V.  CONCLUSION

For the foregoing reasons, the Court finds that it is without jurisdiction to address Kercher's tax refund claim. Accordingly, the Government's motion for summary judgment (Dkt. #47) is **GRANTED** and the Kerchers' motions for summary judgment (Dkt. #48, #49) are **DENIED**.

It is SO ORDERED.
SIGNED this 13th day of March, 2012.


AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE